IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH,

CENTRAL DIVISION

| | |
|---|---|
| NATIONAL STAFFING SOLUTIONS, INC., <br><br> Plaintiff, <br><br> v. <br><br> NATIONAL STAFFING SPECIALISTS, LLC, <br><br> Defendant. | ORDER AND MEMORANDUM <br><br> DECISION <br><br><br> Case No. 2:20-cv-00534 <br><br> Judge Tena Campbell |

Plaintiff, National Staffing Solutions, Inc., brings this action against Defendant, National Staffing Specialists, LLC, for trademark infringement and unfair competition under federal and Florida law. On August 5, 2020, Defendant moved to stay this case pending resolution of a trademark cancellation proceeding before the Trademark Trial and Appeal Board (TTAB). (Def.'s Mot. to Stay, ECF No. 34.) Five days later, Defendant moved to dismiss four of Plaintiff's claims under Rule 12(b)(6). (Def.'s Mot to Dismiss, ECF No. 35.) For the reasons set forth below, Defendant's motion to stay is DENIED and Defendant's motion to dismiss is DENIED IN PART.

## BACKGROUND

When ruling on a 12(b)(6) motion to dismiss, the court takes all well-pleaded facts in the complaint as true. Arnold v. McClain, 926 F.2d 963, 965 (10th Cir. 1991). Plaintiff is a Florida corporation that provides employee placement services for health care professionals across the

1

United States. (Compl. at 2, ECF No. 1.) Defendant is a Utah-based company that also provides employee placement services for health care professionals. Plaintiff has two registered marks with the United States Patent and Trademark Office. It owns the NATIONAL STAFFING SOLUTIONS character mark, U.S. Application No. 88104778, and the NATIONAL STAFFING SOLUTIONS design mark, U.S. Application No. 88636348. (Compl. at 3.)

Plaintiff first learned about Defendant's use of the NATIONAL STAFFING SOLUTIONS mark in 2017. According to Plaintiff, Defendant uses an identical NATIONAL STAFFING SOLUTIONS character mark and a similar logo. Defendant also uses the "http://nationalstaffingsolutions.net/" domain name. (Compl. at 4.)

| Plaintiff's Mark | Defendant's Mark |
| --- | --- |
| NATIONAL STAFFING SOLUTIONS | NATIONAL STAFFING SOLUTIONS LLC |

On April 14, 2020, Plaintiff sued Defendant in U.S. District Court for the Middle District of Florida, bringing five causes of action:

1) federal trademark infringement of the NATIONAL STAFFING SOLUTIONS mark and logo under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a),

2) federal unfair competition and false designation of origin,

3) Florida common law trademark infringement,

4) Florida common law unfair competition, and

2

      5)      Violation of the Florida Deceptive and Unfair Trade Practices Act (FDUTPA), Fla. Stat, § 501.204.

(Compl. at 5–9.) On June 25, 2020, Defendant filed a motion to dismiss for lack of jurisdiction, or in the alternative, a motion to change venue. (ECF No. 15.) But that motion was denied as moot when the parties filed a joint motion to transfer venue from the Middle District of Florida to the District of Utah. (ECF No. 19.) Judge Honeywell granted the parties' joint motion to transfer venue under 28 U.S.C. § 1404(a) for the convenience of the parties. (Order, ECF No. 22.)

## ANALYSIS

### I.    Defendant's Motion to Stay

Defendant moves to stay this case pending the outcome of a trademark cancellation proceeding before the U.S. Patent and Trademark Office's Trademark Trial and Appeal Board ("TTAB Cancellation Proceeding.") (Def.'s Mot. to Stay at 1.) For the following reasons, Defendant's motion to stay is denied.

On August 4, 2020, Defendant petitioned TTAB to cancel registration of Plaintiff's mark. According to Defendant, Plaintiff misrepresented to the U.S. Patent and Trademark Office (USPTO) that it had used the NATIONAL STAFFING SOLUTIONS mark exclusively. (Id. at 2–4.) Defendant maintains that Plaintiff knew of Defendant's use of the NATIONAL STAFFING SOLUTIONS mark but falsely declared under oath that it's use of the mark was exclusive.

A district court has inherent discretion to stay an action pending the conclusion of an alternative proceeding which bears upon the case. Landis v. North American Co., 299 U.S. 248, 254 (1936). A court determines whether to grant a stay by considering (1) whether granting a stay likely would simplify the issues; (2) the stage of the litigation; and (3) whether the stay

would unduly prejudice the non-moving party. Lifetime Prods. Inc. v. Russell Brands, LLC, 1:12-cv-26-DN, 2013 WL 5408458, at *2 (D. Utah Sept. 25, 2013); In re Laughlin Products, Inc., 265 F.Supp.2d 525, 530 (E.D. Pa. 2003).

    A.    **A stay will not significantly simplify the issues.**

To claim trademark infringement, a party must own a "valid, protectable trademark." Skullcandy, Inc. v. Filter USA, Inc., No. 2:18-CV-00748-DAK, 2019 WL 2568010, at *4 (D. Utah June 21, 2019.) Trademarks that are inherently distinctive are entitled to protection. Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 768 (1992). The plaintiff in a trademark lawsuit bears the burden of proof that its mark is valid and protectable, but USPTO registration of the mark provides prima facie evidence of the mark's validity and entitles the plaintiff to a presumption that the mark is distinctive and protectable. 15 U.S.C. § 1115(a); Educational Development Corp. v. Economy Co., 562 F.2d 26, 28 (10th Cir. 1977).

Defendant argues that a stay is warranted because the TTAB Cancellation Proceeding will simplify the issue of whether Plaintiff's trademark is valid and protectable. (Def.'s Mot. to Stay at 5.) If Plaintiff's registration is canceled, Plaintiff will lose the presumption that its mark is inherently distinctive. Instead, Plaintiff's mark will be considered merely descriptive and Plaintiff will have to meet a different test—that its mark has secondary meaning— to prove that its mark is valid and protectable. Two Pesos, 505 U.S. at 768–69. On the other hand, if TTAB upholds Plaintiff's registration, the court will presume that Plaintiff's mark is distinctive, valid, and protectable.

The court agrees that resolution of the TTAB Cancellation Proceeding will clarify which presumptions apply to this case, based on whether Plaintiff's trademark remains registered. But

this is the extent to which the TTAB Cancellation Proceeding will simplify the issues of this case, and it is not enough to justify a stay.

First, any presumption created by resolution of the TTAB Cancellation Proceeding is rebuttable, not binding, and would require the same factual issues to be litigated again if challenged in this court. See Educational Development, 562 F.2d at 28; PHC v. Pioneer Healthcare, 75 F.3d 75, 80 (1st Cir. 1996). Federal courts have concurrent jurisdiction with TTAB over issues relating to the registration and cancellation of trademarks. 15 U.S.C. § 1119. TTAB "is not an ordinary administrative agency whose findings control unless set aside after court review under a highly deferential standard." PHC, 75 F.3d at 80. "Under the Lanham Act, where a contested Board proceeding has already addressed the validity of the mark, the Board's findings can be challenged in a civil action in district court through new evidence, and, at least to a large extent, the issues can be litigated afresh." Id. (citing 15 U.S.C. § 1071(b)). TTAB's factfinding is not conclusive, nor is this court limited to the TTAB record. Goya Foods, Inc. v. Tropicana Products, Inc., 846 F.2d 848, 853 (2nd Cir. 1988).

Second, even if Plaintiff's registration is cancelled, Plaintiff's claims are not dependent on federal registration. As mentioned above, registration entitles Plaintiff to a presumption of distinctiveness, but Plaintiff's mark may still be protected under the Lanham Act and Florida common law without registration. Two Pesos, 505 U.S. at 768 ("[I]t is common ground that § 43(a) [of the Lanham Act] protects qualifying unregistered trademarks.")

Third, this case involves more issues than just whether Plaintiff has a valid, protectable mark. Plaintiff seeks injunctive relief and damages for trademark infringement. (Compl. at 9–10.) TTAB does not adjudicate issues of trademark infringement. Rhoades v. Avon Prod., Inc.,

504 F.3d 1151, 1163 (9th Cir. 2007). Unlike a federal district court, TTAB cannot provide relief for an infringement claim, "either injunctive or by way of damages." Id.

### B. The case status does not favor a stay.

This case is in its infancy. Defendant has not yet answered the complaint, a scheduling order has not been entered, discovery has not begun, and initial disclosures have not been exchanged. In the TTAB Cancellation Proceeding, deadlines for discovery, disclosures, and trial have already been set. See, National Staffing Specialists v. National Staffing Solutions, Cancellation No. 92074902, (T.T.A.B. 2018) (TTAB Dkt. No. 2 at 3.) Discovery opened in the TTAB Cancellation proceeding on October 16, 2020.

Courts often deny a stay based on case status where discovery has been completed, a trial has been set, or the parties and the court have otherwise expended significant resources. See, e.g. Interwoven, Inc. v. Vertical Computer Sys., Inc., No. C 10-04645 RS, 2012 WL 761692, at *4 (N.D. Cal. Mar. 8, 2012). Here, neither party nor this court has expended significant resources yet. Discovery has not yet begun in this case and is just starting in the TTAB Cancellation Proceeding, and the court is confident that the parties can plan discovery knowing that this case will move forward at the same time as the TTAB Cancellation Proceeding. Discovery can occur concurrently in both proceedings in a way that is not overly duplicative or wasteful.

### C. Plaintiff will be unduly prejudiced by a stay.

Plaintiff alleges that Defendant is infringing its trademarks and that by doing so, "Defendant is acquiring income, profits, and goodwill at Plaintiff's expense." (Compl. at 5; Pl.'s Opp'n to Def.'s Mot. to Stay, at 6.) Defendant also contends that "Plaintiff has [] traded on Defendant's goodwill and has attempted to trade on Defendant's goodwill." (Def.'s Mot. to Stay at 2.) The earliest possible date on which the TTAB Cancellation Proceeding would be scheduled

6

for final decision is February 8, 2022—about 17 months from now. (TTAB Dkt. No. 2 at 3.) And this is assuming that no deadlines are extended and that the parties do not request oral argument. Allowing the alleged infringing activities to continue for at least another year and a half will result in undue prejudice for Plaintiff. Plus, a stay could also harm Defendant if Plaintiff is able to continue to "trade on Defendant's goodwill," as Defendant has stated.

When a district court lawsuit concerns trademark infringement, "the interest in prompt adjudication far outweighs the value of having the views of the [USPTO]." Goya, 646 F.2d at 853–54. A party seeking to enjoin alleged infringement "is entitled to have the infringement issue resolved promptly so that it may conduct its business affairs in accordance with the court's determination of its rights." Id. at 854. Because TTAB does not adjudicate issues of infringement, Plaintiff will not be able to seek injunctive relief until at least February 8, 2022, and Defendant will be able to continue its alleged infringing activities until then.

Defendant notes that the court should not presume that Plaintiff will suffer irreparable harm if this case is stayed. (Def.'s Reply to Mot. to Stay at 5); see also Herb Reed Enterprises, LLC v. Florida Entm't Mgmt., Inc., 736 F.3d 1239 (9th Cir. 2013); Underwood v. Bank of Am. Corp., 2018 WL 6655913, at *5 (D. Colo. Dec. 19, 2018). But the court's determination is about undue prejudice, not irreparable harm. In evaluating the factor of undue prejudice, "courts have taken a practical approach to determining whether the non-movant will suffer undue prejudice from a stay." Digital Ally, Inc. v. Taser Int'l, Inc., No. 16-CV-2032-CM-TJJ, 2017 WL 1048351, at *3 (D. Kan. Mar. 20, 2017). Here, because TTAB cannot resolve issues of infringement, a stay would only delay adjudication of the infringement issue–something which the Plaintiff is entitled to have resolved promptly.

In sum, all three factors weigh in favor of denying the stay. Though the TTAB Cancellation Proceeding would likely simplify the issue of whether Plaintiff has a valid, protectable trademark, that is one issue among several others before the court and would not significantly simplify the case. Additionally, the case status and likelihood of undue prejudice weigh against a stay.

## II.   Defendant's Motion to Dismiss

Defendant moves to dismiss Plaintiff's first claim for federal trademark infringement, arguing that Plaintiff has not sufficiently pled a plausible claim. Defendant also moves to dismiss Plaintiff's third, fourth, and fifth causes of action, maintaining that these claims under Florida law are not actionable against Defendant. Defendant's motion to dismiss is denied in part.

To withstand a motion to dismiss, a complaint must include sufficient allegations of fact to state a claim to relief that is plausible on its face. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). A plaintiff must offer sufficient factual allegations to raise a right to relief above the speculative level. Kan. Penn Gaming, LLC v. Collins, 656 F.3d 1210, 1214 (10th Cir. 2011) (quotations omitted). Conclusory statements and formulaic recitations of legal elements are inadequate. Cory v. Allstate Ins., 583 F.3d 1240, 1244 (10th Cir. 2009).

### A.   Plaintiff has pled a plausible federal trademark infringement claim.

To state a plausible claim for federal trademark infringement under the Lanham Act, a plaintiff must allege "(1) that the plaintiff has a protectable interest in the mark; (2) that the defendant has used 'an identical or similar mark' in commerce; and (3) that the defendant's use is likely to confuse consumers." 1-800-Contacts, Inc. v. Lens.com, Inc., 722 F.3d 1229, 1238 (10th Cir. 2013). The analysis of liability for Florida common law trademark infringement is the same

8

as the federal analysis under the Lanham Act. Kobe Japanese Steak House of Florida, Inc. v. XU, Inc., 2014 WL 6608967 at *3 (M.D. Fla. Nov. 20, 2014).

Defendant argues that Plaintiff has not sufficiently pled a trademark infringement claim because Plaintiff does not state explicitly that Defendant uses a mark with a graphic star as part of the "N" in "NATIONAL." According to Defendant, the star is a key element of Plaintiff's design mark, and Plaintiff's claim should be dismissed because Plaintiff has not alleged that Defendant also uses a star in its mark. (Def.'s Mot. to Dismiss at 5.)

To state a plausible claim of trademark infringement, Plaintiff is required to plead only that Defendant used a 'similar' mark that is likely to confuse consumers. Plaintiff has done so. On its face, Defendant's mark is similar to Plaintiff's. The font and layout of the NATIONAL STAFFING SOLUTION text in Defendant's mark appear to be almost the same as that of Plaintiff's mark. Whether the presence of the star makes a difference in terms of confusing consumers is question of fact. See Dorpan, S.L. v. Hotel Melia, Inc., 728 F.3d 55, 64 (1st Cir. 2013). Plaintiff has sufficiently pled a plausible trademark infringement claim under the Lanham Act.

Additionally, Defendant contends that Plaintiff's third cause of action for Florida common law trademark infringement is not plausible because Plaintiff's allegation of trademark rights "across the United States" is not specific enough to raise a right to relief above the speculative level. (Def.'s Mot. to Dismiss at 6–7.)

Trademark rights do have a territorial scope. See Tana v. Dantanna's, 611 F.3d 767, 780 (11th Cir. 2010) ("[T]he scope of protection accorded [a common-law] mark is coextensive only with the territory throughout which it is known and from which it has drawn its trade."). But territorial scope is a question of fact; the territory is the geographical area in which consumers

9

are likely to confuse the marks of the legitimate user and the infringing user. <u>Dorpan, S.L. v. Hotel Melia, Inc.</u> (1st Cir. 2013) (quoting William Jay Gross, Comment, <u>The Territorial Scope of Trademark Rights,</u> 44 U. Miami L. Rev. 1075, 1078 (1990)). Businesses with nationwide sales, services, or advertising can have large trade territories in which consumers can be confused by infringing marks. <u>See, e.g., Gastown, Inc. of Del. v. Gastown, Inc.</u>, 331 F. Supp. 626, 632 (D. Conn. 1971).

Here, the complaint states that Plaintiff provides employment placement services to consumers throughout the United States, Florida and Utah included. (Compl. at 2.) Because Plaintiff claims that its mark is used throughout the country in connection with its services, it is plausible that the territorial scope of its trademark rights is nationwide. Plaintiff has stated a sufficient trademark infringement claim.

**B.     The court is without the necessary facts and arguments to determine whether Florida or Utah law applies to Plaintiff's supplemental state law claims.**

This case was transferred from the Middle District of Florida to Utah pursuant to U.S.C. 1404(a), which allows a district court to transfer a case, for the convenience of the parties, to any other district where it might have been brought or to which all parties have consented. Plaintiff and Defendant consented to transfer this case to Utah, but Plaintiff's third, fourth, and fifth claims are Florida state law claims.

Defendant argues that because it does not operate or conduct any activity in Florida, any application of Florida statutes or common law is "unjustified and improper." (Def.'s Mot to Dismiss at 6.) Defendant contends that Plaintiff only agreed to transfer venue because it wanted to avoid outright dismissal of the case for lack of personal jurisdiction in Florida.

A federal court exercising supplemental jurisdiction over state law claims in a federal question lawsuit generally applies the choice-of-law rules of the state in which it sits.

BancOklahoma Mortg. Corp. v. Capital Title Co., Inc., 194 F.3d 1089, 1103 (10th Cir. 1999). Where venue is proper in one district and the case is subsequently transferred to a different district under 28 U.S.C. § 1404(a), the choice-of-law rules of the transferor court's forum state—here, Florida—apply. Van Dusen v. Barrack, 376 U.S. 612, 639 (1964).

But there is an exception to that exception. The Tenth Circuit held that when a case is transferred because the transferor court could not exercise personal jurisdiction over a defendant, the transferee court should apply the choice-of-law rules of the state in which it sits. Doering ex rel. Barrett v. Copper Mountain, Inc., 259 F.3d 1202, 1209 (10th Cir. 2001) ("When the transferor court lacks personal jurisdiction . . . the choice of law rules of the transferee court apply."); Trierweiler v. Croxton & Trench Holding Corp., 90 F.3d 1523, 1535 (10th Cir. 1996).

This is true even when the case was transferred under 28 U.S.C. § 1404(a) for convenience of the parties rather than under 28 U.S.C. § 1406(a) for improper venue, so long as the transfer did in fact cure a jurisdictional defect. Trierweiler, 90 F.3d at 1532; see also Muldoon v. Tropitone Furniture Co., 1 F.3d 964, 967 (9th Cir. 1993); Davis v. Louisiana State Univ., 876 F.2d 412, 414 (5th Cir.1989) (per curiam)."The transferor court's characterization of the reason for the transfer is not controlling." Applied Predictive Techs., Inc. v. MarketDial, Inc., No. 2:19-CV-496-JNP, 2019 WL 3554016, at *1–2 (D. Utah Aug. 5, 2019). Id. The Tenth Circuit has emphasized that this rule is necessary to discourage forum-shopping. "[i]t prevents a party from filing in a district that lacks jurisdiction to hear his or her case in order to receive the benefit of that forum's law." Trierweiler, 90 F.3d at 1532.

In Applied Predictive Technologies, the District of Delaware transferred a federal question lawsuit with supplemental state law claims to the District of Utah under 28 U.S.C. § 1404(a). 2019 WL 3554016, at *1. The transferor court did not engage in an assessment of

11

whether Delaware, its forum state, possessed personal jurisdiction over the defendant. Accordingly, the District of Utah—the transferee court—needed to resolve the personal jurisdiction question to determine which state's choice-of-law rules apply. Id. at *1–2. The defendant's motion did not provide the necessary facts or arguments for the court to determine whether Delaware had personal jurisdiction or how to apply either state's choice-of-law framework. The court found it could not rule on defendant's motion because of this deficiency and ordered the defendant to re-brief the issue. Id. at *2.

Here, the issue of whether Florida can exercise personal jurisdiction over Defendant was never judicially determined. But the Middle District of Florida court transferred this case based on facts suggesting a personal jurisdiction problem: "Defendant and Defendant's agents reside and may be found in Utah. Defendant's principal place of business is in Sandy, Utah. Additionally, Defendant contends it does not have offices in Florida or conduct business activities in Florida." (Order, ECF No. 22 at 3–4.) Just because the parties agreed to transfer the case to Utah before the Middle District of Florida court addressed the personal jurisdiction issue does not mean a potential jurisdictional defect in Florida disappears. See Trierweiler, 90 F.3d at 1532 n.4.

The inquiry remains: Can Florida exercise personal jurisdiction over Defendant? If not, then Utah choice-of-law rules apply, and the court must determine which state has the most significant relationship to the cause of action. Rupp v. Transcon. Ins. Co., 627 F. Supp. 2d 1304, 1314 (D. Utah 2008). If Florida does have personal jurisdiction over Defendant, then Florida's choice-of-law rules apply.

The Defendant's pending motion to dismiss does not address any of these choice-of-law issues, and the court is without the facts and arguments to resolve them. Accordingly, the court

instructs Defendant to re-brief its motion to dismiss for Plaintiff's third, fourth, and fifth claims. Defendant should provide sufficient facts supporting why it believes Florida lacks personal jurisdiction over it. Then, Defendant should apply the appropriate choice-of-law framework. Plaintiff will have the opportunity to respond.

## ORDER

The Defendant's motion to stay is DENIED and all case deadlines remain unchanged. The Defendant's motion to dismiss is DENIED IN PART. On Defendant's motion to dismiss Plaintiff's first claim, the motion is DENIED. On Defendant's motion to dismiss Plaintiff's third, fourth, and fifth claims, the court ORDERS Defendant to re-brief the motion to cure the choice-of-law deficiency. Defendant must thoroughly address 1) whether Florida or Utah's choice-of-law rules apply, based on whether Florida has personal jurisdiction over Defendant, and 2) under the appropriate state's choice-of-law framework, whether Plaintiff's third, fourth, and fifth claims under Florida law are proper. Plaintiff may submit a response in opposition.

IT IS SO ORDERED.

DATED this 20th day of October, 2020.

BY THE COURT:

_____
JUDGE TENA CAMPBELL
U.S. District Court