IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| NATIONAL STAFFING SOLUTIONS, INC., <br><br> Plaintiff, <br><br> vs. <br><br> NATIONAL STAFFING SPECIALISTS, LLC, <br><br> Defendant. | ORDER AND MEMORANDUM DECISION <br><br> Case No. 2:20-cv-00534-TC <br><br> Judge Tena Campbell |

Plaintiff National Staffing Solutions, Inc., brings this action against Defendant National Staffing Specialists, LLC, based on alleged infringement of Plaintiff's protected trademarks. Before the court is Defendant's motion to dismiss Plaintiff's third, fourth, and fifth claims for Florida common law trademark infringement, Florida common law unfair competition, and violation of the Florida Deceptive and Unfair Trade Practices Act (the "Florida law claims").

For the reasons described, Defendant's motion to dismiss (ECF No. 35) the Florida law claims is denied.

## FACTUAL AND PROCEDURAL BACKGROUND[1]

Plaintiff is a Florida corporation that provides employee placement services for healthcare professionals across the United States. (Compl. ¶ 6 (ECF No. 1).) Defendant is a

---

[1] Relevant facts are taken from the complaint and from affidavits and evidence submitted in support of Defendant's motion and Plaintiff's opposition. Well-pleaded facts are taken as true for the purposes of this order. Arnold v. McClain, 926 F.2d 963, 965 (10th Cir. 1991).

1

Utah-based company that also provides employee placement services for healthcare professionals. Defendant's principal place of business is in Sandy, Utah. (Id. ¶ 5.)

Plaintiff owns the NATIONAL STAFFING SOLUTIONS mark, which is registered with the United States Patent and Trademark Office (Id. ¶ 8.) Plaintiff alleges that Defendant infringed its trademark rights when it used an identical mark and operated the website http://nationalstaffingsolutions.net. (Id. ¶ 12–15.)

Defendant's website is accessible nationwide and Defendant has advertised at least one job position on its website that appears to be geographically unlimited. (Pl.'s Opp'n Ex. A (ECF No. 54-1).) Still, Defendant says that residents of Florida cannot purchase or use any of its services in Florida because it has never provided employee placement services in that state. (Def.'s Reply at 5–6 (ECF No. 55).) Other than its website, Defendant does not operate or conduct any activities in Florida and does not direct any marketing or advertising specifically to residents of Florida. (Janeczko Decl. at ¶¶ 5–10 (ECF No. 15-1).)

Plaintiff originally brought this action in the Middle District of Florida, raising five claims against Defendant: federal trademark infringement under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); federal unfair competition and false designation of origin; Florida common law trademark infringement; Florida common law unfair competition, and violation of the Florida Deceptive and Unfair Trade Practices Act (FDUTPA), Fla. Stat, § 501.204.

Defendant moved to dismiss for lack of personal jurisdiction in Florida. (ECF No. 15). Before the court ruled on Defendant's motion, the parties filed a joint motion to transfer venue to the District of Utah, which the court granted. (ECF No. 22). Since Plaintiff consented to the transfer, the parties did not fully brief Defendant's motion to dismiss for lack of personal jurisdiction nor did they conduct any jurisdictional discovery. The Middle District of Florida did

not rule on Defendant's motion to dismiss or issue any conclusive finding about whether it could exercise personal jurisdiction.

After the case was transferred to this court, Defendant moved to dismiss four of Plaintiff's claims under Rule 12(b)(6). (ECF No. 35). The court denied dismissal of the first federal trademark infringement claim, finding that Plaintiff sufficiently pleaded that claim. (Mem. Decision and Order at 8 (ECF No. 50).) But the court did not have enough information to determine whether dismissal of the Florida law claims was proper. Accordingly, the court ordered the parties to submit supplemental briefs on the issue of whether the Florida law claims should be dismissed based on lack of personal jurisdiction in Florida. (Id. at 10–13.)

## **LEGAL STANDARD**

To withstand a motion to dismiss under Rule 12(b)(6), a complaint must include sufficient allegations of fact to state a claim to relief that is plausible on its face. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Sufficient factual allegations raise a right to relief above the speculative level. Kan. Penn Gaming, LLC v. Collins, 656 F.3d 1210, 1214 (10th Cir. 2011). Conclusory statements and formulaic recitations of legal elements are inadequate. Cory v. Allstate Ins., 583 F.3d 1240, 1244 (10th Cir. 2009).

Although Defendants move to dismiss Plaintiff's Florida law claims under Rule 12(b)(6), their request is predicated on a personal jurisdiction question. The plaintiff bears the burden of establishing personal jurisdiction over a defendant, and all allegations in the complaint are taken as true if they are "plausible, non-conclusory, and non-speculative." Shrader v. Biddinger, 633 F. 3d 1235, 1239 (10th Cir. 2011). When a defendant submits evidence to challenge personal jurisdiction, the plaintiff has a duty to come forward with affidavits or other written materials supporting the jurisdictional allegations in the complaint. Dudnikov v. Chalk & Vermilion Fine

Arts, Inc., 514 F. 3d 1063, 1070 (10th Cir. 2008); Pytlik v. Professional Resources, Ltd., 887 F. 2d 1371, 1376 (10th Cir. 1989). Factual disputes in the affidavits are resolved in the plaintiff's favor. Dudnikov, 514 F. 3d at 1070 (citing FDIC v. Oaklawn Apartments, 959 F.2d 170, 174 (10th Cir.1992)).

## ANALYSIS

Defendant argues that the Florida law claims should be dismissed because Defendant is not subject to Florida law based on lack of personal jurisdiction in Florida. Plaintiff responds that Defendant's consent to a venue transfer under 28 U.S.C. § 1404(a) subjected Plaintiff to the Florida law claims and eliminated any doubt about whether Florida law applies. Regardless of the effect of the transfer, Plaintiff contends that personal jurisdiction is proper in Florida.

Federal courts may exercise supplemental jurisdiction over state law claims in a federal question lawsuit. See 28 U.S.C.A. § 1367. Generally, a federal court exercising supplemental jurisdiction applies the choice-of-law rules of the state in which it sits. BancOklahoma Mortg. Corp. v. Capital Title Co., Inc., 194 F.3d 1089, 1103 (10th Cir. 1999). But where venue is proper in one district and the case is transferred to a different district under 28 U.S.C. § 1404(a), the choice-of-law rules of the transferor court's forum state apply. Van Dusen v. Barrack, 376 U.S. 612, 639 (1964).

There is an exception to this exception: When a case is transferred because the transferor court could not exercise personal jurisdiction, the transferee court applies the choice-of-law rules of the state in which it sits. Doering ex rel. Barrett v. Copper Mountain, Inc., 259 F.3d 1202, 1209 (10th Cir. 2001); Trierweiler v. Croxton & Trench Holding Corp., 90 F.3d 1523, 1535 (10th Cir. 1996). This rule applies even when the parties consented to transfer the case under 28 U.S.C. § 1404(a), so long as the transfer did in fact cure a jurisdictional defect. Trierweiler, 90

F.3d at 1532; Applied Predictive Techs., Inc. v. MarketDial, Inc., No. 2:19-CV-496-JNP, 2019 WL 3554016, at *1–2 (D. Utah Aug. 5, 2019). Id. The purpose of this rule is to discourage forum shopping, as it "[i]t prevents a party from filing in a district that lacks jurisdiction to hear his or her case in order to receive the benefit of that forum's law." Trierweiler, 90 F.3d at 1532.

In order to decide which state's choice-of-law rules apply—which will in turn determine whether the Florida law claims survive dismissal—the court must first evaluate whether there is personal jurisdiction over Defendant in Florida. If personal jurisdiction exists in Florida, the court will apply Florida's choice-of-law rules to determine which state's law should apply to Plaintiff's third, fourth, and fifth claims. If Florida lacks jurisdiction, then Utah's choice-of-law rules apply.

## I. Personal Jurisdiction in Florida

To obtain personal jurisdiction over a nonresident defendant, the plaintiff must first show that jurisdiction is legitimate under the laws of the forum state. Madara v. Hall, 916 F.2d 1510, 1514 (11th Cir. 1990). Then, the plaintiff must demonstrate that the exercise of jurisdiction comports with the due process clause of the Fourteenth Amendment to the U.S. Constitution. Id.

### A. Florida's Long-Arm Statute

Florida's long-arm statute allows jurisdiction over a nonresident defendant who has "committ[ed] tortious acts within this state." Fla. Stat. § 48.193 (1)(a)(2). The Eleventh Circuit construes this provision to permit jurisdiction over a defendant who commits torts outside of Florida that cause injury inside Florida. Licciardello v. Lovelady, 544 F.3d 1280, 1283 (11th Cir. 2008); Posner v. Essex Ins. Co., 178 F.3d 1209, 1216 (11th Cir. 1999). Plaintiff maintains that jurisdiction over Defendant is appropriate under Florida's long-arm statute because Defendant's

operation of a website containing an allegedly infringing use of Plaintiff's trademark is a tortious act within the state.

Injury from trademark infringement usually occurs in the state where the trademark owner resides or has its principal place of business. J.B. Oxford Holdings, Inc. v. Net Trade, Inc., 76 F.Supp.2d 1363, 1368 (S.D. Fla. 1999). Courts interpreting Florida law have held that "trademark infringement on an Internet website causes injury and occurs in Florida 'by virtue of the website's accessibility in Florida.'" Louis Vuitton Malletier, S.A. v. Mosseri, 736 F.3d 1339, 1354 (11th Cir. 2013) (quoting Licciardello, 544 F.3d at 1283); see also JCS Industries LLC v. DesignStein LLC, No. 619CV544ORL37EJK, 2019 WL 5391192, at *3 (M.D. Fla. Oct. 22, 2019); Xymogen, Inc. v. Digitalev, LLC, No. 6:17-cv-869-Orl-31KRS, 2018 WL 659723, at *2 (M.D. Fla. Feb. 1, 2018) ("[A]s long as a website is accessible in Florida, it has been held that trademark infringement on the website occurs in Florida if the victim company is headquartered here").

Defendant allegedly uses the NATIONAL STAFFING SOLUTIONS mark on its website, which is accessible nationwide. Although Defendant does not direct any marketing or advertising specifically to residents of Florida, its website is, at the least, viewable from Florida. Based on the standard set forth in Licciardello and Louis Vuitton, this alleged infringement is considered a tortious act within Florida under Florida law. Defendant is subject to personal jurisdiction under Florida's long-arm statute.

### B. The Due Process Clause

"Even though a statute may permit a state to assert jurisdiction over a nonresident defendant, the due process clause of the United States Constitution protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has

established no meaningful 'contacts, ties, or relations.'" Licciardello, 544 F.3d at 1284 (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 319 (1945)). For a court to exercise personal jurisdiction over a nonresident defendant, the defendant must "have certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Int'l Shoe, 326 U.S. at 316 (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)). The court begins by reviewing Defendant's contacts with Florida.

### 1. Minimum Contacts

"Intentional torts ... may support the exercise of personal jurisdiction over the nonresident defendant who has no other contacts with the forum." Licciardello, 544 F.3d at 1285 (citing Calder v. Jones, 465 U.S. 783, 790 (1984)). In intentional tort cases, there are two applicable tests for evaluating minimum contacts: (1) the "effects test," which the Supreme Court articulated in Calder, or (2) the traditional purposeful availment test. See Louis Vuitton, 736 F.3d at 1356. Courts apply the effects test in trademark-related intentional tort cases either in lieu of or in addition to the traditional purposeful availment test. Id. at 1356; see also Chloé v. Queen Bee of Beverly Hills, LLC, 616 F.3d 158, 172 (2nd Cir. 2010); Toys "R" Us, Inc. v. Step Two, S.A., 318 F.3d 446, 454–55 & n. 6 (3rd Cir. 2003). The tests have a shared goal, which is to ensure that an out-of-state defendant is not bound to appear in a forum state for merely "random, fortuitous, or attenuated contacts" with the state. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985)).

Under the effects test, a defendant's single tortious act can establish minimum contacts if the tort was (1) intentional; (2) aimed at the forum state; and (3) caused an injury that the defendant should have anticipated would be suffered in the forum state. Licciardello, 544 F.3d at 1285. The traditional purposeful availment test asks whether the defendant's contacts (1) are

related to the plaintiff's cause of action; (2) involve some act by which the defendant purposefully availed himself of the privileges of doing business within the forum; and (3) are such that the defendant should reasonably anticipate being haled into court in the forum. Louis Vuitton, 736 F.3d at 1357.

In the internet context, the Eleventh Circuit has explained that "where the internet is used as a vehicle for the deliberate, intentional misappropriation of a specific individual's trademarked name or likeness and that use is aimed at the victim's state of residence, the victim may hale the infringer into that state to obtain redress for the injury." Licciardello, 544 F.3d at 1288 n. 8 But the mere maintenance of a website that is accessible in the forum state is usually not enough to establish that a defendant aimed its intentional tort at the forum state or purposefully availed itself of that state's laws. Id.; see also Cybersell, Inc. v. Cybersell, Inc., 130 F.3d 414, 418 (9th Cir.1997) (beyond an accessible website, there must be "something more" to demonstrate that the defendant directed his activity toward the forum state.); Nida Corp. v. Nida, 118 F. Supp. 2d 1223, 1230 (M.D. Fla. 2000). The Southern District of Florida has elaborated:

> These cases require more than mere maintenance of a web site accessible in the forum state; they require contacts that illustrate purposeful availment of the privilege of conducting commercial activity in the forum—contacts that tie the defendant to a particular state, not those that merely link with equal strength the defendant to all states.

JB Oxford Holdings, 76 F. Supp. 2d at 1367 (citing Cybersell,130 F.3d at 420).

Based on the allegations in the complaint and the attached affidavits and exhibits, the court finds that under either the Calder effects test or the traditional purposeful availment test, Defendant does not have sufficient minimum contacts in Florida. There are no fact suggesting that Defendant deliberately intended to misappropriate the NATIONAL STAFFING SOLUTIONS mark or aimed its use of the mark at Florida. To the contrary, Defendant provides

no services or healthcare placement activities in Florida and does not market its business to Florida residents. Defendant merely operates a website that is accessible everywhere. Its contacts with Florida are no greater than its contacts with any other state or country in which its website is viewable.

Defendant's online activities are substantially different from those of defendants who had sufficient minimum contacts for personal jurisdiction purposes. For example, the defendant in Licciardello intentionally posted the trademarked name and image of the plaintiff on a website to imply that the plaintiff endorsed the defendant's skills. 544 F.3d at 1287–88. The defendant committed this tort to attract potential clients in the forum state, and the Eleventh Circuit upheld the exercise of personal jurisdiction because the defendant deliberately targeted the plaintiff in the forum. See also JCS Industries, 2019 WL 5391192, at *6 (explaining that the defendant had sufficient minimum contacts when it purchased a product from the plaintiff in the forum state and then created an infringing website in order to sell the same products in competition with the plaintiff). In contrast, Defendant's website is not intentionally directed at attracting customers in Florida or advertising services there.

Moreover, the court is not convinced that Plaintiff's use of the word "nationwide" on its website is evidence that it aimed its infringing activities at Florida or purposefully availed itself of Florida's laws. Defendant's services are not available in every state across the country. The word "nationwide" alone, without more, does not create deliberate engagement or a substantial connection with Florida, as is required for personal jurisdiction. See Burger King, 471 U.S. at 475–76.

In short, Defendant does not have sufficient minimum contacts in Florida to satisfy personal jurisdiction under the due process clause.

## II. Utah's Choice-of-Law Analysis

"When the transferor court lacks personal jurisdiction . . . the choice of law rules of the transferee court apply." Doering ex rel. Barrett v. Copper Mountain, Inc., 259 F.3d 1202, 1209 (10th Cir. 2001). Utah courts apply the "most significant relationship" approach, as described in the Second Restatement of Conflict of Laws, to assess which state's laws should apply to a particular claim. Waddoups v. Amalgamated Sugar Co., 54 P.3d 1054, 1059 (Utah 2002). "The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties." Restatement (Second) Conflict of Laws § 145 (1971). The test involves consideration of four factors: (1) the place where the injury occurred; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence, nationality, place of incorporation and place of business of the parties; and (4) the place where the relationship, if any, between the parties is centered. Id.

The Restatement includes commentary on the proper weight that should be attributed to each factor depending on the type of case involved. "The place of the plaintiff's domicile, or on occasion his principal place of business, is the single most important contact for determining the state of the applicable law as to most issues in situations involving the multistate publication of matter that injures plaintiff's reputation or causes him financial injury [.]" Id. § 145 cmt. e.

Plaintiff's injury occurred in Florida where Plaintiff owns the NATIONAL STAFFING SOLUTIONS mark and feels the alleged financial and reputational loss associated with Defendant's infringement. Harm may also occur in other states, Utah included, where consumers can access Defendant's website and potentially confuse the parties' marks. Although Defendant's conduct occurred in Utah, the Restatement suggests that Plaintiff's principal place

of business should be afforded the most weight in this situation. Accordingly, Florida has the most significant relationship to the case.

## CONCLUSION

The Utah choice-of-law analysis reveals that Florida has the most significant relationship to this case. As a result, Florida law applies to the state law claims over which this court has supplemental jurisdiction. Plaintiff has properly pleaded the third, fourth, and fifth claims under Florida law and these claims survive dismissal. Defendant's motion to dismiss (ECF No. 35), which the court has already denied in part, is now DENIED IN FULL.

DATED this 18th day of May, 2021.

BY THE COURT:

*Tena Campbell*

TENA CAMPBELL
U.S. District Court Judge